Eustache v Board of Educ. of the City Sch. Dist. of the City of N.Y (2025 NY Slip Op 52037(U))

[*1]

Eustache v Board of Educ. of the City Sch. Dist. of the City of N.Y

2025 NY Slip Op 52037(U)

Decided on December 18, 2025

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 18, 2025
Supreme Court, New York County

Jeffrey Eustache, Plaintiff,

against
Board of Education of the City School District of the City of New York, SHARON LAFIA, Defendant.

Index No. 153619/2019

Plaintiff:
Lindsay Michelle Goldbrum
Goddard Law PLLC
39 Broadway, Suite 1540, New York, NY 10006-3091
Phone: (646) 964-1178
Email: lindsay@goddardlawnyc.com
New York City Department of Education:
Nikhill Anand Pandey
New York City Law Department
350 Jay Street, 8th Floor, Brooklyn, NY 11201
Phone: 718-724-5264
Email: npandey@law.nyc.gov
Defendant LaFia:
Cory Hal Morris
The Law Offices of Cory H. Morris (Cory H. Morris, P.C.)
863 Islip Ave, Central Islip, NY 11722
Phone: (631) 450-2515
Email: coryhmorris@gmail.com / info@coryhmorris.com

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 009) 207, 208, 209, 210, 211, 213, 214, 215, 216, 217, 218, 219, 220, 221were read on this motion to/for DISMISS.
Upon the foregoing documents, plaintiff Jeffery Eustache ("Plaintiff") moves, pursuant to CPLR § 3211, to dismiss defendant Sharon LaFia's ("LaFia") counterclaims, for leave to file an amended complaint, and for an award of sanctions. LaFia opposes the motion and also seeks an award of sanctions. For the reasons set forth herein, the motion is granted to the extent that the counterclaims are dismissed and denied as to the remainder. Both requests for sanctions are denied.
BACKGROUND
Plaintiff was previously employed by defendant the New York City Department of Education ("DOE") as a Paraprofessional (Teaching Assistant) at Intermediate School 171 ("IS 171") in Brooklyn, New York (NYSCEF Doc No. 214, amended complaint ¶ 12).[FN1]
At all relevant times, defendant LaFia was a special education teacher at IS 171. As part of his employment, Plaintiff brought students into LaFia's classroom several times a week (id. ¶ 16). Plaintiff alleges in the complaint that LaFia sexually harassed Plaintiff beginning in winter 2017 by, inter alia, expressing an interest in a romantic or sexual relationship with Plaintiff and making comments about his appearance and inquiries into his romantic life (id. ¶ 18), calling and texting him on his personal cell phone (id. ¶¶ 21-22), making sexual comments to Plaintiff (id. ¶ 34), attempting to sit on Plaintiff's lap in front of students (id. ¶¶ 43-49), and rubbing his shoulders in a sexual manner (id. ¶ 88). Plaintiff, who is a Black, also alleges that LaFia harassed him on the basis of his race (id. ¶¶ 39, 51). Plaintiff also alleges that another teacher at IS 171, Lyndsey Cicillini ("Cicillini"), who is also a personal friend of LaFia, was privy to, or present with LaFia during, some of the alleged harassment (id. ¶¶ 21—22, 43—49).
On May 8, 2018, Plaintiff told a student he could not attend an upcoming field trip as a punishment for making inappropriate and vulgar comments (id. ¶ 94). He alleges that LaFia rescinded the punishment despite acknowledging the behavior, and thereafter, "nitpicked everything that Plaintiff did, criticized his every move, and tried to get him written up" (id. ¶¶ 95-100). Plaintiff alleges that LaFia "undermined" him "in retaliation for confronting her about her racist comments and rejecting her sexual advances" (id. ¶ 59).
On May 10, 2018, Plaintiff met with the principal of PS 171, Indira Mota ("Principal Mota"), and told her that LaFia was making inappropriate and sexual comments to him (id. ¶ 103). Plaintiff contends that "Principal Mota did not appear to believe Plaintiff" (id. ¶ 103). "When he insisted that Principal Mota look at the sexually harassing text messages, she did so and then begrudgingly admitted that Plaintiff could file a claim with the EEO [Equal Employment Office] if he wanted to" (id.). Plaintiff filed an EEO complaint the same day (id. ¶ 104).
The next day, May 11, 2018, Principal Mota informed Plaintiff that he would be changing duties and working in the In-House Suspension room for the day (id. ¶ 108). At the end of the day, Plaintiff had a second meeting with Principal Mota where she "handed him a piece of [*2]paper stating that he was being suspended without pay pending an 'investigation'" (id. ¶ 109).
On May 21, 2018, Plaintiff was asked to attend a meeting with Assistant Principal Kristen Conlon ("AP Conlon") and his Union Representative Mercedes Perez ("Union Representative Perez") (id. ¶ 118). There, AP Conlon informed him that he was suspended for looking at an Instagram picture of a woman in a bathing suit in front of a student in the classroom on May 8, 2018 (id. ¶ 119). Plaintiff denied the allegation and told AP Conlon there was "no way he would have done this, because he was on a field trip with students that day" (id. ¶ 120). He also showed her a privacy protector installed on his phone that created a barrier so that others could not see what is on his phone (id. ¶ 121).
Plaintiff's suspension continued into the following school year. On September 25, 2018, Plaintiff attended a "Closing Conference" of the investigation with AP Conlon and Union Representative Perez (id. ¶ 141). At the conference, he was provided with a letter stating that he was found guilty of viewing inappropriate content on May 9, 2018, rather than May 8, 2018, the date on which he was away from school on a field trip (id. ¶ 142). Plaintiff was permitted to return to work the following day, with the prior suspension serving as his punishment (id. ¶ 143).
On September 26, 2018, Plaintiff returned to work, where he was again scheduled to work with LaFia (id. ¶ 145). Plaintiff did not request a schedule change because he was "too deflated and distraught from the retaliation he faced after filing his complaint, and he feared retaliation by LaFia and one of the assistant principals at the school" (id. ¶ 147). Thereafter, Plaintiff alleges that he experienced a severe hostile work environment at the hands of his supervisors, Assistant Principals Conlon and Griffith, from October 2018 through January 2019 (id. ¶ 148). Plaintiff further asserts that he was harassed and subjected to a hostile work environment in retaliation for filing an EEO complaint, and that the DOE failed to act on his complaint because he is a male alleging harassment (id. ¶¶ 157—189).
On June 15, 2019, DOE brought charges pursuant to New York State Education Law Section 3020-a against LaFia (NYSCEF Doc No. 148, opinion and award at 1).[FN2]
A hearing was held in the proceeding on December 9 and 17, 2021; January 5, 18, 19, 24, and 28; February 7, 10, 15, and 28; and March 1, 3, and 15, 2022 (id. at 2). Plaintiff, LaFia, Cicillini, Principal Mota, two students, and several other individuals testified at the hearing (id.). Seven discrete charges were interposed against LaFia, including sending sexual or racist text messages to Plaintiff in February and March 2018 (Specifications 1—3); making racist or inappropriate comments regarding LaFia's son to Plaintiff between March and April 2018 (Specification 4); asking Plaintiff to share stories about growing up poor or on food stamps in March and April 2018 (Specification 5); attempting to sit on Plaintiff's lap or touching Plaintiff between March and April 2018 (Specification 6); and creating a hostile, offensive, and/or intimidating working environment (Specification 7) (id. at 3).
Testimony was also elicited at the hearing that Plaintiff, LaFia, and Cicillini participated in group text messages that included sexual remarks, and that Cicillini was known to send messages from other staff members' phones and had the opportunity to send some of the relevant messages from LaFia's phone (id. at 23—27). The hearing officer further determined that [*3]Plaintiff's credibility was at issue due to his "lengthy disciplinary record and criminal history, including credit card fraud, a crime of deceit" (id. at 15). At the conclusion of the hearing, the hearing officer found Plaintiff guilty of Specifications 2, 3(A), 4(B) and (C), and 6, and not guilty of Specifications 1, 3(B), 4(A) and (D), 5, and 7, based on a preponderance of the evidence (id. at 27). The hearing officer found LaFia not guilty of sexual harassment or racial discrimination, but guilty of sexual misconduct, making inappropriate comments, and conduct unbecoming her position, and recommended a financial penalty of $10,000 (id. at 27—28).
PROCEDRUAL BACKGROUND
This matter has a labyrinthine procedural history, replete with motion practice, procedurally defective and often unnecessary filings, and repeated requests for sanctions. The relevant portions of this history are recited here, as reflected on the court's docket.
On April 8, 2019, Plaintiff commenced this action by filing a summons with notice, followed by a complaint on May 17, 2019 (NYSCEF Doc Nos. 1, 5, summons with notice, complaint). The complaint interposed causes of action against the DOE and LaFia for (1) gender discrimination in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"), (2) race discrimination in violation of the NYSHRL and NYCHRL, and (3) retaliation (NYSCEF Doc No. 5, complaint).
On October 25, 2019, Defendant the New York City Department of Education ("DOE") filed a motion to dismiss the complaint for failure to state a cause of action pursuant to CPLR § 3211 (a)(7) (Motion Seq. 001) (NYSCEF Doc No. 7, notice of motion). While the motion was pending, Plaintiff filed an amended complaint, and the DOE orally withdrew the motion (NYSCEF Doc No. 12, amended complaint). The amended complaint added additional allegations but maintained the same defendants and causes of action (id.).
The DOE and LaFia then each filed motions to dismiss the amended complaint (Motion Seqs. 002, 003). On September 17, 2021, the court entered a decision and order that ordered that the DOE's motion was "granted in part, to the extent that [P]laintiff's claims for race discrimination, direct liability claims for discrimination against the City, and relation are dismissed," and LaFia's motion was granted, dismissing the complaint as against her (NYSCEF Doc No. 35, decision and order, Ramseur, J.). The court also held that LaFia was not Plaintiff's supervisor for the purposes of the discrimination claims (id.).
Plaintiff appealed the decision and moved to reargue (Mot Seq. 004) (NYSCEF Doc Nos. 38, notice of motion; NYSCEF Doc No. 51, notice of appeal). On March 3, 2023, the court entered a decision and order that granted the motion to reargue to the extent that Plaintiff's "claims for retaliation against both defendants—the City Board of Education and Sharon LaFia—are reinstated as viable causes of action" (NYSCEF Doc No. 66, decision and order, Ramseur, J.). The court also denied the motion for leave to reargue the court's earlier determination that LaFia was not Plaintiff's supervisor (id.).
On March 20, 2023, LaFia moved pursuant to CPLR § 3212 for summary judgment to dismiss the complaint and for attorneys' fees and costs pursuant to New York Civil Rights Law § 70-a [1], known as New York's anti-SLAPP law (Motion Seq. 005) (NYSCEF Doc No. 70, notice of motion). Plaintiff opposed the motion on the grounds that, inter alia, it was premature because issue had not been joined and LaFia had already filed a motion to dismiss (NYSCEF Doc No. 91, memo in opp). Plaintiff also requested, as alternative relief, a stay of the motion [*4]return date until June 26, 2023, and sanctions against LaFia's counsel for refusing to withdraw the motion (id. at 1). Contemporaneously, the DOE twice sought to adjourn the motion, which Plaintiff opposed (NYSCEF Doc No. 97, 98, 114, 119, 120). Ultimately, the court denied the request and the motion was deemed submitted on June 5, 2023 (NYSCEF Doc No. 121, order).
The DOE filed an answer to the amended complaint on July 11, 2023 (NYSCEF Doc No. 123, answer). On August 25, 2023, LaFia filed a motion for sanctions against the DOE and its counsel, and to strike portions of the DOE's answer by which LaFia alleges that the DOE admitted certain information on behalf of LaFia and pursuant to CPLR § 3024 on the grounds that the statements were scandalous or prejudicial (Motion Seq. 006) (NYSCEF Doc No. 124, notice of motion). The DOE opposed and argued that it did not make admissions on behalf of LaFia, it is in possession of records that provided a good faith basis for the statements set forth in its answer, the answer conformed to the CPLR and its actions were not sanctionable, that the motion to strike pursuant to CPLR § 3024 was untimely, and that the statements are relevant to Plaintiff's claims and not prejudicial (NYSCEF Doc No. 145, memo in opp). The DOE requested that Plaintiff be sanctioned for frivolous motion practice (id.). By decision and order entered on November 15, 2023, the court denied both the motion for summary judgment and the motion for sanctions (NYSCEF Doc No. 157, decision and order, Kim, J.). The court also denied the DOE's request for sanctions "without prejudice to renewal of [this] request should LaFia continue to engage in motion practice clearly barred by the CPLR" (id.).
On June 13, 2024, the Appellate Division, First Department, issued a decision and order which modified the original September 17, 2021 order, on the law, to deny the DOE's motion to dismiss, and otherwise affirmed the order to the extent of dismissing Plaintiff's claims for direct liability for race and gender discrimination against LaFia (NYSCEF Doc No. 167, appellate decision).[FN3]
The Appellate Division, First Department, held that Plaintiff had stated a cause of action for race and gender discrimination under the NYSHRL and NYCHRL, but that his claims against LaFia for race and gender discrimination were properly dismissed because he did not allege that she had any authority over the terms, conditions, or privileges of his employment (id.).
On March 20, 2023, LaFia moved, pursuant to CPLR § 3212, for summary judgment dismissing the complaint and for an award of attorneys' fees and costs (Motion Seq. 005) (NYSCEF Doc No. 70, Notice of Motion). Plaintiff opposed the motion as premature because issue had not been joined and requested that the court award sanctions against LaFia for refusing to withdraw the untimely motion (id. at 1). Contemporaneously, the DOE twice sought to adjourn the motion, which Plaintiff opposed (NYSCEF Doc Nos. 97, 98, 114, 119, 120). Ultimately, the court denied the requests, and the motion was deemed submitted on June 5, 2023 (NYSCEF Doc No. 121, Order).
On June 11, 2023, while the motion was pending, the DOE filed an answer to the amended complaint (NYSCEF Doc No. 123, answer). LaFia then moved for sanctions against the DOE and its counsel to strike portions of the DOE's answer by which LaFia alleges that the DOE admitted certain information on behalf of LaFia and pursuant to CPLR § 3024 on the grounds that the statements were scandalous or prejudicial (Motion Seq. 006) (NYSCEF Doc [*5]No. 124, notice of motion). The DOE opposed the motion, arguing that it did not make admissions on behalf of LaFia; that it is in possession of records providing a good-faith basis for the statements set forth in its answer; that the answer conformed to the CPLR and its actions were not sanctionable; that the motion to strike pursuant to CPLR § 3024 was untimely; and that the statements are relevant to Plaintiff's claims and not prejudicial (NYSCEF Doc No. 145, Memo in Opp.). The DOE also requested that Plaintiff be sanctioned for frivolous motion practice (id.).
The motions for summary judgment and for sanctions were consolidated for decision. On November 15, 2023, the court entered a decision that denied the motion for summary judgment as premature because issue was not joined and, to the extent that LaFia moved to dismiss, in violation of the "single motion rule" that limits parties to one motion to dismiss (NYSCEF Doc No. 157, decision and order, Kim, J.). The court also denied LaFia's motion for sanctions against the DOE, holding that the responses in the DOE's answer were permissible under CPLR § 3018 (a) because they are based on the documents and records of the DOE, interviews with DOE employees, and portions of LaFia's Education Law § 3020-a disciplinary proceeding (id. at 3). The court also denied the DOE and Plaintiff's requests for sanctions, "without prejudice to renewal of [this] request should LaFia continue to engage in motion practice clearly barred by the CPLR" (id.). LaFia filed an appeal of the court's decision.
On November 14, 2023, the Appellate Division, First Department, issued a decision on the appeal of the November 17, 2021 decision on the DOE and LaFia's motions to dismiss (NYSCEF Doc No. 163).[FN4]
This was followed by a revised decision dated June 13, 2024, which recalled and vacated the November 14, 2023 decision and order (NYSCEF Doc No. 167). The revised decision and order modified the September 17, 2021 order, on the law, to deny the DOE's motion to dismiss, and otherwise affirmed the order to the extent of dismissing Plaintiff's claims for direct liability for race and gender discrimination against LaFia (NYSCEF Doc No. 167, appellate decision). The Appellate Division, First Department, held that Plaintiff stated a cause of action for race and gender discrimination under the NYSHRL and NYCHRL, but his claims against LaFia for race and gender discrimination were properly dismissed because he did not allege that she had any authority over the terms, conditions, or privileges of his employment (id.). The Appellate Division, First Department, order did not address the retaliation claims that were restored by the March 3, 2023 decision on the motion to reargue (id.).
On June 24, 2024, LaFia moved for a stay of the proceedings pending appellate review of the motion for summary judgment or, in the alternative, to renew her motion for summary judgment (Motion Seq. 008) (NYSCEF Doc No. 168, notice of motion), and Plaintiff separately moved for an order granting an extension of the discovery deadlines in this matter (Motion Seq. 007) (NYSCEF Doc No. 173, notice of motion).[FN5]
The motion for a stay was denied (NYSCEF Doc No. 199, decision and order, Kim, J.), and the discovery motion was granted to the extent that a discovery conference was scheduled and the parties directed to enter into a stipulation with new discovery deadlines (NYSCEF Doc No. 192, decision and order, Kim, J.).
On March 27, 2025, the Appellate Division, First Department, issued a decision and order unanimously affirming the September 15, 2023 decision and order, which denied LaFia's motion under CPLR § 3211 and 3212 to dismiss Plaintiff's retaliation cause of action (NYSCEF Doc No. 201, appellate decision; reported as Eustache v Board of Educ. of the City Sch. Dist. of the City of NY, 236 AD3d 590, 591 [1st Dept 2025]). The Appellate Division, First Department, held that the motion for summary judgment was properly denied as premature, and the motion to dismiss was properly denied pursuant to the single motion rule (id.). The Appellate Division, First Department, also held that LaFia was also not "entitled to a successive motion to dismiss under the November 10, 2020 amendments to the anti-SLAPP law (Civil Rights Law § 76-a; CPLR § 3211[g]), because this action was commenced in 2019 and the anti-SLAPP law does not have retroactive application" (id. at 2). Finally, the Appellate Division, First Department, held that "[a]lthough the statute's separate provision creating a counterclaim for damages and attorneys' fees under § 70-a applies prospectively to cases commenced or continued after the effective date, the amended definition of an 'action involving public petition and participation' does not apply retroactively to motions to dismiss filed in actions commenced prior to the amendments' effective date" (id.).
On July 29, 2025, LaFia filed an answer to the amended complaint, which interposes counterclaims against Plaintiff for violation of anti-SLAPP statutes (NY Civil Rights Law §§ 70-a, 76-a) and abuse of process against Plaintiff (NYSCEF Doc No. 205, answer).[FN6]
Plaintiff then filed the instant motion seeking leave to file a second amended complaint and to dismiss LaFia's counterclaims (NYSCEF Doc No. 207, notice of motion). The proposed amendment consists of factual allegations and a fourth cause of action for anti-SLAPP violations (NYSCEF Doc No. 211, mem in support at 1). On September 5, 2025, while the motion was pending, LaFia filed an amended answer as of right, which adds additional allegations to the claims interposed in the prior answer (NYSCEF Doc No. 212, amended answer).[FN7]
Whereas both parties address their supplemental filings to the amended answer, the court will consider the amended answer as the relevant filing for the purposes of this motion.
In support of the motion, Plaintiff argues that LaFia's anti-SLAPP counterclaim should be dismissed because LaFia failed to plead public interest speech with particularity, Plaintiff has a substantial basis for his claims, LaFia did not plead the heightened fault or § 70-a prerequisites, and the claim is otherwise legally defective. Plaintiff further argues that that the abuse of process counterclaim fails because service of a summons and complaint is not deemed "process" for the purpose of the cause of action. Plaintiff also asserts that LaFia's own violation of New York's anti-SLAPP provisions entitle Plaintiff to damages and that he should be awarded sanctions for LaFia's frivolous conduct in this action. Finally, Plaintiff argues that the court should strike LaFia's affirmative defenses as "legally inapposite to the sole remaining retaliation claim."
LaFia opposes the motion and argues that Plaintiff's motion to amend should be denied because Plaintiff failed to attach a copy of the proposed amended complaint, that the amended answer correctly represented that the sole remaining claim against LaFia is the retaliation claim "based on LaFia's speech," and that her anti-SLAPP counterclaim is appropriate and properly pleaded.
DISCUSSION
The standard of review on a motion to dismiss pursuant to CPLR § 3211 (a)(7) is the same for a claim, crossclaim, or counterclaim (CPLR § 3019 [d]). The court must accept the facts as alleged in the pleading as true, accord the non-moving the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994] [citations omitted]). Ambiguous allegations must be resolved in favor of the non-moving party (see JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015]). "The motion must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002] [internal citations omitted]). Whether the non-moving party can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (Cortlandt Street Recovery Corp. v Bonderman, 31 NY3d 30, 38 [2018]), but a pleading consisting of "bare legal conclusions" is insufficient (Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006], affd 9 NY3d 836 [2007], cert denied 552 US 1257 [2008]) and "the court is not required to accept factual allegations that are plainly contradicted by the documentary evidence or legal conclusions that are unsupportable based upon the undisputed facts" (Robinson v Robinson, 303 AD2d 234, 235 [1st Dept 2003]).
Dismissal under CPLR § 3211 (a) (1) is warranted "only where the documentary evidence utterly refutes plaintiff's [or counterclaim defendant's] factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002]). "To be considered 'documentary' under CPLR § 3211 (a) (1), evidence must be unambiguous and of undisputed authenticity" (Fontanetta v John Doe 1, 73 AD3d 78, 86 [2d Dept 2010] [internal citation omitted]). In effect, "the paper's content must be 'essentially undeniable and . . . assuming the verity of [the paper] and the validity of its execution, will itself support the ground on which the motion is based" (Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc., 120 AD3d 431, 432 [1st Dept 2014] [internal citation omitted]). Affidavits and deposition testimony do not qualify as documentary evidence for the purposes of CPLR § 3211 (a) (1) (Lowenstern v Sherman Sq. Realty Corp., 143 AD3d 562, 562 [1st Dept 2016]; Correa v Orient-Express Hotels, Inc., 84 AD3d 651, 651 [1st Dept 2011]), but judicial records, mortgages, deeds and contracts (Fontanetta, 73 AD3d at 84), and email and letter correspondence (Kolchins v Evolution Mkts, Inc., 31 NY3d 100, 106 [2008]) may be considered.
Plaintiff first moves to dismiss LaFia's anti-SLAPP and abuse of process counterclaims. In 1992, the New York legislature enacted the first "statute designed to protect certain individuals who face targeted litigation for their participation in public affairs, i.e., Strategic Lawsuits Against Public Participation" (Gottwald v Sebert, 40 NY3d 240, 250 [2023]). This "anti-SLAPP" statute is codified in Civil Rights Law § 76-a and § 70-a. As originally enacted, Civil Rights Law § 76-a (1) (a) provided as follows:
"An 'action involving public petition and participation' is an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission."
An "action involving public petition and participation" was narrowly defined to include only claims "brought by a public applicant or permittee," further defined as "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or permission" (Civil Rights Law former § 76-a [1] [a], [b] [1992]; Gottwald, 40 NY3d at 256). Defendants in a SLAPP suit were also entitled to a counterclaim that, if successful, could potentially recover costs, attorney's fees, and damages (Gottwald, 40 NY3d at 256; Civil Rights Law former § 70-a [1] [a], [b], [c] [1992]).
In 2020, the legislature amended the anti-SLAPP provisions to extend the protection of the statute to a broader class of individuals (Gottwald, 40 NY3d at 256). The amendments expanded the scope of anti-SLAPP protection to encompass claims based on "(1) any communication in a place open to the public or a public forum in connection with an issue of public interest" or "(2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition" (Reeves v Associated Newspapers, Ltd., 232 AD3d 10, 17 [1st Dept 2024], lv dismissed, 44 NY3d 990 [2025]; Civil Rights Law § 76—a[1][a][1]—[2]). "Simply put, the 2020 amendments expanded the scope of anti-SLAPP protections to encompass all public communications on any nonprivate matter" (id.). The amendments also overhauled the expedited dismissal procedure set forth in CPLR § 3211(g), adding new provisions which created an accelerated summary judgment procedure under CPLR § 3211(a)(7) (id.). The amendments also "altered the remedy offered by section 70-a for defendants falling within the purview of the amended section 76-a," by empowering defendants to "maintain an action, claim, crossclaim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action" (Gottwald, 40 NY3d at 256). "The award of costs and attorney's fees to defendants was made mandatory rather than a matter of discretion" (id.)
LaFia sought to avail herself of the accelerated summary judgment procedure with her prior motion for summary judgment and to dismiss, which was denied by the court and affirmed by the Appellate Division, First Department. In affirming this court's decision, the Appellate Division, First Department, noted that "LaFia is not entitled to a successive motion to dismiss under the November 10, 2020 amendments to the anti-SLAPP law (Civil Rights Law § 76—a; CPLR § 3211 [g]) because this action was commenced in 2019 and 'the anti-SLAPP law does not have retroactive application" (Eustache v Board of Educ., 236 AD3d at 591, citing Reeves, 232 AD3d at 19). The Appellate Division, First Department, further noted that "[a]lthough the statute's separate provision creating a counterclaim for damages and attorneys fees under § 70-a applies prospectively to cases commenced or continued after the effective date, the amended definition of an 'action involving public petition and participation' does not apply retroactively to motions to dismiss filed in actions commenced prior to the amendments' effective date" (id., citing Reeves, 232 AD3d at 19 and VIP Pet Grooming Studio, Inc. v Sproule, 224 AD3d 78, 89-[*6]90 2d Dept 2024]).
The Appellate Division, First Department, recently revisited this holding in Islay v. Garde (241 AD3d 1085, 1088 [1st Dept 2025]). Citing its prior holding that "the amended definition of an action involving public petition and participation does not apply retroactively to motions to dismiss filed in actions commenced prior to the amendments' effective date," the Appellate Division, First Department, specifically "declin[ed] to apply this finding to those actions commenced prior to, but continued after, the effective date of the amendments, as it is inconsistent with the Court of Appeals' holding in Gottwald and this [c]ourt's holding in Reeves" (Islay, 241 AD3d at 1088). Rather, the Appellate Division, First Department, held that the amended definition of an action "involving public petition and participation" is properly applied where a lawsuit commenced before the 2020 amendments is continued after the amendments' effective date (id. at 1088 [holding that supreme court correctly applied the amended definition in dismissing the action against a plaintiff who continued a pre-amendment action after the effective date of the amendment]). In so doing, the Appellate Division, First Department, relied on its holding from Reeves:
Although this lawsuit did not fall within the definition of an 'action involving public petition and participation' until the 2020 amendments to the statute . . . and 'the intended application of the amendments to the statute allowing a counterclaim for costs and attorney's fees is prospective,' . . . 'there is no retroactive effect when those amendments are applied, according to their terms, to the continuation of an action beyond the effective date of the amendments'"
(id. at 1088-1089, citing to Reeves, 232 AD3d at 19). Thus, in this case where Plaintiff has continued the action and now moves to dismiss LaFia's counterclaims, the amended definition is applicable.
LaFia's anti-SLAPP counterclaim asserts that she "regularly participated with parents in petitioning government, advancing the rights of persons with special needs, instructing parents on how to petition government to ensure the rights of special education students were not harmed, such that her speech constitutes 'any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition'" (NYSCEF Doc No. 212, amended answer at 7 ¶ 23). LaFia further alleges, in a conclusory manner, that this action constitutes a SLAPP action "intended to censor, intimidate, and silence the Defendant by burdening them with the cost of a legal defense until they abandon their criticism or opposition" of twelve issues regarding the rights of Special Education students with the New York City School System, including "[c]oncerns over the presence of marijuana smoke/marijuana emissions around Special Education Students," violence against Special Education students, "physical" and "mental" protection of Special Education students against various abuses, including "exposure to nude/semi-nude persons" and "exposure to inappropriate material(s) or substances," and protection against retaliation, intimidation, and other "[v]arious forms of Petition more fully described by witnesses to the disciplinary hearing of [] LaFia conducted by the New York State Education Department" (id. ¶ 38).
Although the rights and interests of Special Education students in New York City Schools is undoubtedly "an issue of public interest," the conclusory allegation that Plaintiff [*7]commenced this action to silence her advocacy for students is insufficient to plead an anti-SLAPP counterclaim because the amended answer is devoid of any factual allegations that suggest a nexus between LaFia's advocacy and this action (CPLR § 3211 [a][7]; Civil Rights Law § 76—a). LaFia also does not identify any public speech or conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition to support a finding that this case is an "action involving public petition and participation" under amended Civil Rights Law § 76—a.
Aside from vague references to her advocacy for children, the only speech that LaFia specifically identifies in her counterclaim is her alleged reporting of Plaintiff for viewing inappropriate materials on his phone in front of students (NYSCEF Doc No. 213, aff in opp at 3; NYSCEF Doc No. 212, amended answer ¶¶ 20, 38). Assuming, arguendo, that LaFia made the report at issue—which she denies and which is contradicted by testimony elicited at the June 15, 2019 DOE hearing—the report was neither public in nature nor made in furtherance of the exercise of LaFia's constitutional right to free speech or her right to petition. To the contrary, LaFia alleges in her amended complaint that any such report would have been made in compliance with her legal obligations as a mandatory reporter (id. ¶ 40). The mere fact that the retaliation claim is "based on LaFia's speech" (NYSCEF Doc No. 213, Aff. in Opp. at 3) does not transform it into a SLAPP action where the underlying facts fail to satisfy the statutory criteria set forth in Civil Rights Law § 76-a. Accordingly, the counterclaim fails to state a cause of action, and dismissal pursuant to CPLR § 3211(a)(7) is warranted.
The anti-SLAPP cause of action in Plaintiff's proposed second amended complaint is similarly deficient. A party may amend or supplement their pleading "at any time by leave of court or by stipulation of all parties" (CPLR § 3025 [a]). Leave to amend should be freely given in the absence of prejudice or surprise to the opposing party, unless the proposed amendment is devoid of merit (Reyes v BSP Realty Corp., 171 AD3d 504, 504 [1st Dept 2019]; Boaz Bag Bag v Alcobi, 129 AD3d 649, 649 [1st Dept 2015]). "An amendment is devoid of merit where the allegations are legally insufficient" (Reyes, 171 AD3d at 504). When considering a motion to amend, the court must examine the sufficiency of the merits of the proposed amendment and is not required to accept the movants allegations as true (Boaz, 129 AD3d at 649). "Therefore, a motion for leave to amend a pleading must be supported by an affidavit of merits and evidentiary proof that could be considered upon a motion for summary judgment" (Boaz, 129 AD3d at 649). "A proposed amendment that cannot survive a motion to dismiss should not be permitted" (Scott v Bell Atl. Corp., 282 AD2d 180, 185 [1st Dept 2001], affd as modified sub nom Goshen v Mut. Life Ins. Co. of New York, 98 NY2d 314 [2002]). The party opposing the motion bears a heavy burden of showing prejudice (McGhee v Odell, 96 AD3d 449, 450 [1st Dept 2012]), or demonstrating that the facts as alleged are unreliable or insufficient to support the motion (Peach Parking Corp. v 346 W. 40th St., LLC, 42 AD3d 82, 86 [1st Dept 2007]).
Plaintiff moves to add an anti-SLAPP counterclaim in response to LaFia's "retaliatory counterclaims," which Plaintiff asserts are "based solely on Plaintiff's petitioning activity, to punish and chill Plaintiff's protected complaints and this lawsuit" (NYSCEF Doc No. NYSCEF Doc No. 221, proposed amended complaint ¶ 210). Nevertheless, the inclusion of counterclaims in LaFia's amended answer does not bring the case under the gambit of Civil Rights Law § 76—a merely because the counterclaims "attack Plaintiff's petitioning activity," even where, as here, the counterclaims are insufficiently pleaded (NYSCEF Doc No. 221, proposed amended [*8]complaint ¶ 197).[FN8]
This ouroboros approach to litigation defies logic and contradicts both the plain language and intent of the anti-SLAPP statutes. If Civil Rights Law § 76—a was applicable in the manner suggested by both parties, whereby any claim or counterclaim involving speech gives rise to an anti-SLAPP claim, the exception would become the rule, and virtually any case would fall under the purview of anti-SLAPP.
Moreover, even assuming, arguendo, that either party could establish that the claims or counterclaims asserted in this action constitute a SLAPP suit, the findings of the hearing officer in connection with the June 15, 2019 DOE hearing demonstrate that some or all of both parties' claims or defenses have a substantial basis in law (see Reeves, 232 AD3d at 20). Accordingly, Plaintiff's motion to amend is denied, as the proposed amendment is palpably insufficient and wholly devoid of merit (see Reyes, 171 AD3d at 504).
Plaintiff also moves to dismiss LaFia's second counterclaim for abuse of process. "A cause of action for abuse of process "has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective" (Matthews v New York City Dept of Soc. Servs., Child Welfare Admin., 217 AD2d 413, 415 [1st Dept 1995], citing Curiano v Suozzi, 63 NY2d 113, 116 [1984]). "[T]he mere commencement of a legal action does not constitute abuse of process, and the process must be improperly used after it has been issued" (id.). Neither does a malicious motive alone give rise to a cause of action for abuse of process (id.).
LaFia's counterclaim for abuse of process alleges that Plaintiff "initiated false proceedings, administrative/judicial, against [] LaFia for an improper motive" (NYSCEF Doc No. 212, amended answer ¶ 87) specifically to "harm" her and to "cover up his various wrongdoings and seek monies from New York City to which he is not otherwise entitled" (id. ¶¶ 98, 100). At the outset, this is insufficient to state a claim for abuse of process because commencing a lawsuit cannot form the basis for a cause of action for abuse of process (Board of Ed. of Farmingdale Union Free School District v Farmingdale Classroom Teachers Association, Inc., 38 NY2d 397, 400 [1975]; Hoppenstein v Zemek, 62 AD2d 979, 979-980 [2d Dept 1978] ["the mere institution of a civil action by summons and complaint is not legally considered such process as is capable of being abused"]). Additionally, Plaintiff's alleged desire to "cover up" his own wrongdoings or to obtain financial gain does not support a cause of action for abuse of process, as "the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification" (Board of Educ. of Farmingdale Union Free School Dist., 38 NY2d at 403). Finally, an asserted desire to "harm" Plaintiff reflects only a malicious motive, which is insufficient to give rise to a cause of action for abuse of process (Matthews, 217 AD2d at 415).
Finally, both parties seek an award of sanctions in connection with this motion. However, the submissions of both parties are replete with procedural defects, baseless accusations, meritless arguments, and frivolous assertions. Both parties and their respective counsel have exhibited gratuitously combative and antagonistic behavior on multiple occasions throughout the course of this litigation, as reflected in the case's lengthy and complex procedural history. While [*9]both parties are culpable for such conduct, the court declines to award sanctions to either party.
In the final analysis, the law does not countenance the conflation of mere advocacy with actionable misconduct, nor does it permit the amplification of unproven allegations into instruments of judicial coercion. Litigation, like all civic engagement, must be tempered by fidelity to reason and respect for established principle. While passion may animate the claims and counterclaims before the court, the law's compass remains fixed: it safeguards both the right to petition and the imperative that claims rest upon substantive fact, not conjecture or conjectural motive.
It is therefore with measured restraint, yet firm resolve, that the court observes that neither party's assertions satisfy the rigorous standards required to invoke the protections of the anti-SLAPP statute, nor to establish abuse of process. The pleadings, when tested against the enduring touchstones of CPLR §§ 3211(a)(1), 3211(a)(7), and the governing case law, reveal no substantive cause of action capable of sustaining relief.
The law, in its serene impartiality, requires that judicial scrutiny be guided by clarity of proof, coherence of pleading, and adherence to statutory and constitutional bounds. In this instance, those standards compel the dismissal of the counterclaims, and the denial of further amendment, leaving the parties to navigate the remaining contours of this dispute within the framework that reason and precedent provide.
To the extent not expressly addressed above, the court has carefully considered the remaining arguments advanced by each party and finds them without merit.
Accordingly, it is hereby
ORDERED that Plaintiff's motion to dismiss and amend is granted to the extent that the counterclaims are dismissed, without costs to either party, and is denied as to the remainder; and it is further
ORDERED that both parties' applications for sanctions are denied; and it is further
ORDERED that the parties are directed to appear for an in-person status conference on January 13, 2025 at 2:00 p.m. in the Differentiated Case Management Part, where they shall enter into a stipulation that sets forth a schedule for discovery in this action; and it is further
ORDERED that any future motion practice commenced in this proceeding will not result in a stay of discovery, regardless of whether the motion seeks dispositive or non-dispositive relief, absent exigent circumstances and good cause shown; and it is further
ORDERED that counsel for both parties are directed to familiarize themselves with this court's part rules, which are publicly available on the court's website, and shall strictly comply with the provisions therein, particularly as they relate to resolving discovery disputes and requesting adjournments; and it is further
ORDERED that the failure to comply with the directives herein may result in an award of sanctions.
This constitutes the order and decision of the court.
DATE 12/18/2025
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Unless otherwise noted, the background facts are recited as set forth in the pleadings, and are limited to those relevant to this motion. A fuller recitation of the extensive factual allegations and procedural history may be found in the court's prior decisions entered on September 17, 2021 and March 3, 2023 (NSYCEF Doc Nos. 35, 51)

Footnote 2:The opinion and award of the hearing officer that resulted from the disciplinary proceedings against LaFia were submitted on a prior motion, but are referenced in the party's papers on this motion and are relevant to the issues raised.

Footnote 3:This order also recalled and vacated a prior order of the Appellate Division, First Department, dated November 14, 2023.

Footnote 4:The appellate decision was not filed to this court's docket until December 6, 2023.

Footnote 5:Motion sequences 007 and 008 appear out of order on the court's NYSCEF docket.

Footnote 6:Although LaFia's answer filed July 29, 2025 bears the title "Amended Answer with Affirmative Defenses and Counterclaims," it was the first answer filed by LaFia to the court's electronic docket.

Footnote 7:A first amended plead filed during pendency of motion to dismiss filed in lieu of a responsive pleading is an amendment as of right (CPLR § 3211 (f); Roam Cap., Inc. v Asia Alternatives Mgmt. LLC, 194 AD3d 585, 585-586 [1st Dept 2021]).

Footnote 8:One could even argue that "attacking" the complaint in order to seek redress from the plaintiff is, in fact, the intended purpose of a counterclaim (CPLR §§ 3011, 3019).